**Tennyson BOE et al., Plaintiffs,**

v.

**FORT BELKNAP INDIAN COMMUNITY OF FORT BELKNAP RESERVATION, MONTANA, a Federal Corporation, et al., Defendants.**

**No. CV 78-10-GF.**

United States District Court,
D. Montana,
Great Falls Division.

Aug. 21, 1978.*

* Signed August 18th and mailed to Great Falls for filing.

James W. Zion, Helena, Mont., James W. Spangelo, Havre, Mont., for plaintiffs.

Francis X. Lamebull, Harlem, Mont., for defendants.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

In 1935 the Gros Ventre and Assiniboine Indians residing on the Fort Belknap Indian Reservation in Montana organized as Indian tribes under the name "Fort Belknap Indian Community" pursuant to the provisions of Section 16 of the Indian Reorganization Act of June 18, 1934 (25 U.S.C. § 476). In 1937 the Fort Belknap Indian Community organized as a corporation under the same name pursuant to the provisions of Section 17 of the same Act (25 U.S.C. § 477). The organization under Section 16 of the Act will be referred to as a tribal organization, and the organization under Section 17 of the Act will be referred to as a corporate organization.

In November 1977 an election was held to select six members of the community council. Five of the plaintiffs and the defendant Plumage were elected. The complaint alleges that the ordinances of the community provide:

> The Election Board shall also receive any and all protests to the conduct of the election and shall render that final decision on all such protests. All protests to the election shall be filed with the Election Board within 5 days following the election date. All decisions of the Election Board on such protests shall be final.

No protest was ever filed with the election board. The community council sitting as an election board on November 2, 1977, certified the election. Thereafter, and on November 8, 1977, an action was filed in the tribal court seeking to void the election on the ground that an ineligible person had run. Such person was not elected but did receive some votes. That action aborted. On November 25, 1977, the community council adopted a resolution sustaining the validity of the election. After plaintiffs had assumed office on January 2, 1978, in a case entitled *"Charles D. Plumage, et al. v. Fort Belknap Election Board, et al., and William Bradley, et al.,"* the tribal court declared the election of all six members void, declared six vacancies on the council, and ordered a new election. This was done on the ground that an ineligible person had run and had received some votes. This action followed, alleging that the plaintiffs have been deprived of various constitutional rights and that the court has jurisdiction under the Indian Civil Rights Act (25 U.S.C. §§ 1301-1303) and under 28 U.S.C. §§ 1331(a) and 1343(4). The Fort Belknap Indian Community is named as a defendant, as is the Tribal Court of the Fort Belknap Community "in its capacity as agent of the Fort Belknap Indian Community."

If what the complaint says is true,[1] then the plaintiffs have been deprived of office in violation of the laws adopted by the Fort Belknap Indian Community for its own government.[2]

Despite what appears to be a case which warrants a hearing on the merit, I am forced to conclude that this court is without jurisdiction. The Supreme Court in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), unequivocally held that an Indian tribe is immune from suit in the absence of a waiver. The Fort Belknap corporate charter contains a provision giving the corporation the power to sue and be sued, but the corporate waiver is not a tribal waiver. A comparison of the corporate charter and the

---

1. Defendants' blanket denial of all of the allegations of the complaint, including all the allegations as to the organization of the Fort Belknap Indian Community, smacks of bad faith.

2. Not only do the ordinances seem to make the action of the election board final, but the law and order code makes the tribal organization, which was a party, immune from suit. Fort Belknap Law & Order Code, Chap. I, § 14.6.

community charter makes it clear that the corporate organization and the tribal organization are not the same entity. The corporation, as is evident from the enumeration of its powers, has the function of managing the property of the tribal community, whereas the tribal community is concerned with the government of the tribe. It is the tribal community, not the corporation, which regulates such things as membership, law and order, and the structure of government. The tribal council members elected under the tribal government structure are made the ex officio managers of the corporation. It is for these reasons that I conclude that the action may not be maintained against the Fort Belknap Indian Community. *Atkinson v. Haldane,* 569 P.2d 151 (Alaska 1977), contains a scholarly discussion of this problem.

■ It is true that individuals occupying posts in immune governments are not in themselves immune, and as to the individuals named, the problem is one of jurisdiction. I would have thought that the Indian Civil Rights Law (25 U.S.C. §§ 1301–1303) was a civil rights law (as did the lower courts in *Martinez*) within the provisions of 28 U.S.C. § 1343(4),[3] and was also a law of the United States within the meaning of 28 U.S.C. § 1331(a),[4] and that jurisdiction might be found in those sections. I am tempted to distinguish *Martinez* from this case in that in *Martinez* any effective orders issued against Padilla, an officer of the Santa Clara Pueblo, would have had the effect of impairing the operation of a law of the sovereign pueblo, while here an order enjoining individuals from enforcing the tribal court's decree would enforce rather than impair the tribal law as the tribal government wrote it. I am not sure what is meant by note 4 in the *Martinez* opinion, but it appears to me that the bald pronouncement "[g]iven this history, it is highly unlikely that Congress would have intended a private cause of action for injunctive and declaratory relief to be available in the federal courts to secure enforcement of § 1302" (*Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 69, 98 S.Ct. 1670, 1682, 56 L.Ed.2d 106 (1978) forbids the use of 25 U.S.C. § 1302 in conjunction with either 28 U.S.C. § 1343(4) or 28 U.S.C. § 1331(a) for the purpose of establishing jurisdiction.[5]

For the reasons stated, it is ordered that the action be dismissed and that plaintiffs be denied all relief.

---

3. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . .

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

4. "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

5. I see nothing in the Indian Reorganization Act, 25 U.S.C. §§ 461–479, which, taken in conjunction with 28 U.S.C. § 1331(a), would provide jurisdiction.